## GOMEZ v. DE GONZALES et al.

### No. 12325.

Court of Civil Appeals of Texas.
San Antonio.

March 26, 1952.

Rehearing Denied April 30, 1952.

J. Q. Henry, Mission, Cox, Patterson & Freeland, McAllen, for appellant.

Hill, Lochridge & King, Mission, for appellees.

NORVELL, Justice.

This is an appeal from a decree cancelling a deed executed by Jesus Garcia on October 25, 1945, purporting to convey Lot 3, Block 62 of the City of Mission, Hidalgo County, Texas, to appellant, Fortunato Gomez. Appellees are Consuelo Chapa de Gonzales, Luis Gutierrez and Anastacio Gutierrez, the heirs of Jesus Garcia, deceased.

The record in this case is somewhat confused and complaint is made thereof. The statement of facts is not indexed and contains certain evidences of being incomplete. Two separate hearings are shown, one on November 25, 1949 and another on October 19, 1950. It seems that the November 1949 term of court insofar as this case is concerned was extended until May 3, 1951 when the judgment appealed from was rendered. However it appears that the statement of facts has been agreed to by the attorneys for the parties and approved by the trial judge. Consequently in disposing of the appeal, we can consider only those matters disclosed by the transcript and said statement of facts.

Appellant's five points present (as he says) two main issues, namely, "the validity of the deed from Jesus Garcia to Fortunato Gomez conveying the lot in question and the right of Gomez to be reimbursed for the consideration paid Garcia for the lot, if the validity of the deed be not sustained."

Trial was to the court without a jury and as no findings of fact and conclusions of law were requested, we presume that the trial judge found that Jesus Garcia was without mental capacity to contract as pleaded by appellees, provided that such theory has support in the evidence.

By his first three points, appellant attacks this implied finding of lack of contractual capacity. The consideration paid for the lot was apparently $500. Part of this was paid in cash, part by the delivery of groceries by Gomez to Garcia, and part was represented by a promissory note subsequently discharged. It was not shown that the consideration paid was disproportionate to the value of the lot. The testimony relied upon to support the finding of mental capacity is that given by the witness, Amando Longoria. He was called by appellant to prove that a certain payment upon the note heretofore mentioned had been made in his presence. He was then questioned at length by appellee's attorneys as to the mental condition of Jesus Garcia about the time the disputed deed was executed. Much of the testimony was adduced by means of leading questions, but this procedure was not objected to specifically although the statement of facts shows that at certain times appellant's attorney made

general objections such as, "We object to that", and the like. Longoria's testimony reduced to the narrative was that Jesus Garcia's mother died in August of 1945; that Jesus came to his (Longoria's) ranch and lived out there about three years until he also died; that Jesus Garcia was a drunkard and after his mother's death he was placed in the Hidalgo County jail for being drunk; that he (Longoria) was a deputy sheriff and took Jesus Garcia out to his ranch so that he wouldn't be sent to the State Hospital for the Insane at San Antonio; that particularly after his mother's death, Jesus Garcia drank heavily and was kind of crazy while drinking; that excessive drinking over a number of years had made it so Jesus Garcia could not think clearly, and sometimes he could not carry on an intelligent conversation but would just sit around and look at a person blankly when asked a question; that he was like a child mentally and when he had money would not buy food with it but would spend all of it for beer and tequila; that he never contributed to his mother's support during her lifetime but on the contrary his mother bought his clothes for him as long as she lived; that Jesus Garcia was about forty years old when he died, but when he was at Longoria's ranch during the last three years of his life, he could not be entrusted with much responsibility and was unable to even start a windmill.

■ We think this testimony coming from one who was familiar with Jesus Garcia for the last three years of his life immediately after his mother's death is sufficient to support the trial judge's implied finding that Jesus Garcia did not possess the mental capacity to execute a valid deed in October of 1945. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64.

Appellant's fourth and fifth points are predicated upon Article 5561a, Sec. 7, Vernon's Ann.Civ.Stats., which reads as follows:

"A contract valid on its face, made with, or likewise a conveyance made by a person, who at the time has not been legally adjudged to be of unsound mind, or otherwise incompetent, and who is subsequently shown to have been insane, or otherwise incompetent, at the time of the execution of such contract or conveyance, shall not be set aside or avoided where any such contract or conveyance has been executed in good faith in whole or in part, and was entered into in good faith and without fraud or imposition and for a valuable consideration, without notice of such infirmity, unless the parties to such contract or conveyance shall have been first equitably restored to their original position. The provisions of this Article shall not apply in cases where one of the parties to any such contract or conveyance is insane, and has been so adjudged by a court of competent jurisdiction prior to the date of such contract or conveyance."

■■ Under this statute the burden of proof was not upon appellees as heirs of Jesus Garcia to negative the good faith of Gomez, but the burden lay with Gomez to establish his good faith by a preponderance of the evidence. Pryor v. Awbrey, Tex. Civ.App., 165 S.W.2d 214; Jones v. Lind, Tex.Civ.App., 211 S.W.2d 587. The trial court impliedly held that appellant had not discharged this burden. We cannot disturb this holding for the matter of the credibility of appellant's witnesses was for the trial judge, particularly that of Fortunato Gomez, Jr., who handled the transaction whereby the deed was acquired. This witness testified that he had known Jesus Garcia for many years, and that said Garcia was largely dependent upon his mother during her lifetime. His testimony also discloses that he was aware of the fact that Jesus Garcia was addicted to the excessive use of alcohol, and had been in such condition for a number of years prior to the time of the execution of the deed. From these circumstances as well as the fact that Jesus Garcia could neither read nor write, the trial judge could properly conclude that appellant had not met the burden placed upon him of proving that he was a purchaser without notice of Jesus Garcia's lack of mental capacity on the part of Jesus Garcia.

The judgment appealed from is affirmed.